## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANN MURRAY,
            Appellant,

            v.

NATIONAL AERONAUTICS AND
    SPACE ADMIN,
            Agency.

DOCKET NUMBER
AT-0432-16-0588-I-1

DATE: June 22, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Archibald J. Thomas, III</u>, Esquire, Jacksonville, Florida, for the appellant.

<u>Daniel Shaver</u>, Orlando, Florida, for the agency.

<u>Miata L. Coleman</u>, Esquire, Kennedy Space Center, Florida, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her performance-based removal under 5 U.S.C., chapter 43. For the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's removal is NOT SUSTAINED.

## BACKGROUND

¶2    The appellant was a GS-13 Aerospace Technologist, stationed at the agency's Kennedy Space Center (KSC). Initial Appeal File (IAF), Tab 1 at 1, Tab 6 at 4. The appellant's summary performance was rated on a four-tier scale, ranging from Distinguished to Unacceptable. IAF, Tab 8 at 27; *see* 5 C.F.R. § 430.208(d)(1), Pattern F. Her performance plan contained two critical elements, each rated on a three-tier scale ranging from Substantively Exceeds Expectations to Fails to Meet Expectations. IAF, Tab 8 at 28-31. These two critical performance elements were as follows: (1) "Provide quality products and services for Center Planning and Development Directorate operations and to the KSC Institution. Provide innovative technologies and technical solutions and support to relevant missions of KSC and the Agency;" and (2) "Provide engineering and research and technology services to meet customer needs for mission: Provide services for safe and efficient Technology Development and Innovation." *Id.* at 28, 30. Each of these two performance elements encompassed multiple components and subcomponents. *Id.* at 28-31. The appellant's performance appraisal period ran from May 1 to April 30, of each year. *Id.* at 27.

¶3    After a summary Unacceptable performance rating for the period ending April 30, 2015, the agency placed the appellant on a 90-day performance improvement plan (PIP), beginning October 22, 2015. IAF, Tab 7 at 92-97, Tab 8 at 27. After the PIP period ended, the agency determined that the appellant's performance remained unacceptable in both critical elements, and it removed her effective May 10, 2016. IAF, Tab 1 at 8-25, Tab 6 at 4.

¶4    The appellant filed a Board appeal, arguing among other things that the agency committed a prohibited personnel practice by failing to accommodate her disabling allergy and respiratory conditions. IAF, Tab 1 at 1-6, Tab 19 at 5-6.

After a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 54, Initial Decision (ID). He found that the agency proved each element of its case by substantial evidence, and that the appellant did not prove any of her affirmative defenses, including her affirmative defense of reasonable accommodation disability discrimination. ID at 3-33.

¶5 The appellant has filed a petition for review, disputing several of the administrative judge's findings of fact and conclusions of law, including his findings on her reasonable accommodation disability discrimination claim. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

¶6 After the initial decision in this appeal was issued, the United States Court of Appeals for the Federal Circuit issued a precedential decision holding that part of the agency's burden in a chapter 43 appeal is to justify the initiation of the PIP in the first instance by providing substantial evidence that the appellant's performance prior to the PIP was unacceptable. *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021). Consistent with the Board precedent at the time, the administrative judge did not address this issue in his initial decision. Normally, this would require a remand for further development of the record and issuance of a new initial decision. *See, e.g.*, *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶¶ 16-17. However, because we are reversing the agency's action on other grounds, a remand in this case is unnecessary.

¶7 Furthermore, apart from reasonable accommodation disability discrimination, the appellant raised several other affirmative defenses that we decline to address on petition for review. Specifically, the appellant does not challenge the administrative judge's findings that she failed to prove her affirmative defenses of race discrimination, disparate treatment disability

discrimination, or retaliation for equal employment opportunity activity. ID at 30-33; *see* 5 C.F.R. § 1201.115 ("The Board normally will consider only issued raised in a timely filed petition or cross petition for review."). The appellant argues that the administrative judge failed to adjudicate her affirmative defense of harmful procedural error, PFR File, Tab 1 at 13-14, but because we are reversing the appellant's removal on other grounds and she could not gain any additional relief even if she proved this affirmative defense, we likewise decline to address that argument on review, *see Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 34 & n.9.

<u>The appellant proved her affirmative defense of disability discrimination under a reasonable accommodation theory.</u>

¶8      A Federal agency may not discriminate against a qualified individual on the basis of disability and is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that reasonable accommodation would cause an undue hardship. *See* 29 C.F.R. § 1630.2(o), (p). To establish that she was denied a reasonable accommodation, an appellant must show that: (1) She is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a "qualified " individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide her with a reasonable accommodation. *Bryce B. v. Central Intelligence Agency*, EEOC Appeal No. 2021002721, 2022 WL 103752421, at *10 (Sept. 28, 2022).[2] If the appellant makes this showing, the burden shifts to the agency to show whether the accommodation, even if plausible, would nonetheless impose an undue hardship (i.e., a significant difficulty or expense) on the operations of the agency. *Harvey G. v. Department*

---

[2] The Board will defer to the Equal Employment Opportunity Commission on matters of substantive discrimination law. *Southerland v. Department of Defense*, 122 M.S.P.R. 51, ¶ 12 (2014).

*of Transportation*, EEOC Appeal No. 2022000813, 2022 WL 16848386, at \*6 (Oct. 20, 2022).

¶9      An employer has an affirmative obligation to provide a reasonable accommodation for an individual with a disability. *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 289, n.19 (1987). In general, an accommodation is any change in the work environment, or in the way things are customarily done, that enables an individual with a disability to enjoy equal employment opportunities. 29 C.F.R. § 1630.2(m). Although an employee is not necessarily entitled to her accommodation of choice, "a reasonable accommodation must be an effective accommodation. It must provide an opportunity for a person with a disability to achieve the same level of performance or to enjoy benefits or privileges equal to those of an average similarly situated [person without a disability]." EEOC Technical Assistance Manual on the Employment Provisions of the Americans with Disabilities Act at III, 3.3 (Jan. 1, 1992), https://www.eeoc.gov/laws/guidance/technical-assistance-manual-employment-provisions-title-i-americans-disabilities-act. An "effective" accommodation removes a workplace barrier, thereby providing an individual with an equal opportunity to apply for a position, to perform the essential functions of a position, or to gain equal access to a benefit or privilege of employment. *Barney G. v. Social Security Administration*, EEOC Appeal No. 2021000802, 2022 WL 4546523, at \*7 (Sept. 12, 2022).

¶10     In this case, the appellant first reported her symptoms to an agency Environmental Health official on February 5, 2014, when she complained of tightness in her chest and difficulty breathing. She attributed her symptoms to environmental conditions at the Headquarters building in which she worked.[3]

---

[3] It is undisputed that, during this time period, environmental conditions in the Headquarters building caused similar symptoms in numerous other employees, at least some of whom the agency permitted to telework as a result. IAF, Tab 53, Hearing Recording (HR), Track 3 at 9:10 (testimony of the appellant's supervisor), Track 7 at 20:22 (testimony of the appellant). At the time of the hearing in this appeal, the

IAF, Tab 25 at 78-79. On February 11, 2014, the appellant requested reasonable accommodations in the form of a change in duty location to a different building at KSC. *Id.* at 73. On March 3, 2014, the agency granted the appellant's request on an interim basis, pending the receipt of medical documentation. *Id.* at 50-51, 54. On March 20, 2014, the appellant's allergist provided medical documentation to support the relocation request. *Id.* at 76. On April 14, 2014, the agency officially denied the appellant's request on the bases that the medical documentation did not support the request, and the appellant's Headquarters work area had already undergone significant allergen remediation. *Id.* Notwithstanding, the agency kept the appellant's interim accommodation in place, ostensibly due to another reasonable accommodation request that the appellant had recently filed. *Id.* at 48, 50-51, 54.

¶11        Specifically, on April 11, 2014, the appellant submitted an update to her original reasonable accommodation request, which the agency processed as a separate request. *Id.* at 85-86. The appellant related that the agency intended to terminate her current flexible workweek arrangement, and that this would negatively affect her medical condition. *Id.* at 85. She explained that she was suffering from sleep apnea in connection with her allergies, and that flexible work hours and telework arrangements had theretofore played an important role in managing her symptoms:

> Sometimes I max out at 6 hours per day of capability, other days I can work 12 hours. The variable work schedule allows me to control the levels of my sleep deprivation, control my exposure to allergens which have effects on sleep apnea, and maximize work productivity. So I need the capability of variable start times every day. I also have many medical appointments associated with my illness, so I need the flexibility of a variable work schedule to maximize my work hours by keeping my appointments outside of my 40 hour week.

---

Headquarters building had been slated for demolition. HR, Track 3 at 8:05 (testimony of the appellant's supervisor).

*Id.* at 85-86. The agency construed this as a request for a maxi-flex duty schedule and up to 24 hours of telework per week. *Id.* at 90.

¶12 After receiving medical documentation from the appellant's sleep specialist, on September 10, 2014, the agency denied her request for telework and flexible hours as not being supported by the medical documentation. *Id.* at 91. However, due to a change in the location of the appellant's work unit, the agency decided to reopen her other request, and it approved her relocation to a different office at KSC. *Id.* at 95.

¶13 Nevertheless, even after changing work stations, the appellant continued to experience symptoms. *Id.* at 54. Therefore, on February 4, 2015, the appellant's allergist recommended some additional changes to her work environment, including increased air filtration and circulation, no carpet or cloth-based partitions in the office, weekly cleaning of the work area with damp cloths, and relocation to alternate non-allergenic work areas, including working from home. *Id.* at 54-55. On April 16, 2015, the agency decided to implement the first three recommendations, but it again denied the appellant's request to telework because of her alleged performance deficiency. *Id.* at 52, 55. On June 22, 2015, the appellant renewed her request for a flexible schedule, but the agency denied that request as well, and for the same reason. *Id.* at 47. Despite the agency's efforts at environmental remediation, the appellant continued to experience allergic reactions at her duty station and had to leave the area frequently. IAF, Tab 26 at 47, Tab 53, Hearing Recording (HR), Track 4 at 30:25 (testimony of the appellant). She went so far as to spend long stretches of her workday working outdoors, until the agency ordered her to cease this practice and return to her indoor office. IAF, Tab 26 at 21.

¶14 Turning to the appellant's case in chief, the administrative judge found that the appellant was disabled within the meaning of 29 C.F.R. § 1630.2(g) because, by virtue of her allergies to mold and other substances, she was substantially limited in one or more major life activities, including working. ID at 26. This

finding is supported by the record and is not in dispute. Regarding whether the appellant was "qualified" within the meaning of 29 C.F.R. § 1630.2(m), the administrative judge did not specifically address that issue in his initial decision. Nevertheless, we observe that this issue is intertwined with the issue of whether there existed a reasonable accommodation that would have allowed the appellant to perform the essential functions of her position. We therefore proceed to that portion of the analysis.

¶15    The administrative judge found, and the parties do not dispute, that the agency provided the appellant with several of her requested accommodations, including multiple office relocations, removing the carpet from her office and replacing it with tile, no cloth-based partitions in her office, periodic replacement of air circulation vent filters, and weekly cleaning of her work area. ID at 26-27; IAF, Tab 8 at 57-58, Tab 25 at 54-55, Tab 43 at 35-36. Nevertheless, the accommodations provided by the agency were not effective. That is, the appellant was not performing the essential functions of her job to the extent deemed necessary by the agency to avoid removal for poor performance. *See Natalie S. v. Department of Veterans Affairs*, EEOC Appeal Nos. 0120140815, 0120142049, 2018 WL 703733, at *12 (Jan. 26, 2018). Where, as here, the accommodation appears ineffective, the employer and employee should reexamine the reasonable accommodation. *Id.* at *13.

¶16    Indeed, the facts of this case indicate that telework, a flexible work schedule, or a combination thereof, would have been the next logical accommodation for the agency to try after determining that it could not offer any additional modifications to the appellant's on-site working environment. The record shows that the appellant was working a flexible schedule in the same job until April 2014. IAF, Tab 25 at 85. The agency's revocation of this flexible arrangement coincided with the appellant's alleged decline in performance for the

2014-2015 performance year, which began the following month.[4]  IAF, Tab 8 at 27-34.  Similarly, the appellant had previously been permitted to telework as part of a reasonable accommodation, but the agency revoked her teleworking arrangement in December 2013, less than 6 months prior to the onset of the 2014-2015 performance year.  HR, Track 7 at 16:20 (testimony of the appellant).  There is no evidence that the appellant experienced any performance deficiencies while she was teleworking, and in fact, the appellant testified, without contradiction, that when she was permitted to telework, her performance was excellent.  HR, Track 8 at 35:35 (testimony of the appellant).  Furthermore, it is undisputed that most of the appellant's peer employees were permitted to telework during the time period at issue, and that they were able to perform the essential functions of their positions.  HR, Track 3 at 16:05, Track 4 at 19:50 (testimony of the appellant's supervisor), Track 7 at 15:40, 20:00 (testimony of the appellant).  Moreover, there is good reason to believe that these accommodations would have been effective.  As the appellant has explained repeatedly, from her first accommodation request through the Board hearing, teleworking and a flexible schedule would have reduced her exposure to the allergens present at the work site, facilitated her access to medical care, and afforded her some flexibility in managing the sleep problems that were being caused by her respiratory impairments.  IAF, Tab 25 at 85-86; HR, Track 8 at 35:05 (testimony of the appellant).  The appellant's explanation of the reason for her telework and flexible schedule requests makes sense on its face and presents a straightforward pathway to reducing the workplace barriers attendant to her disability.  The agency does not specifically argue that part-time telework and a flexible schedule would not have been effective in accommodating the

---

[4] It is undisputed that the appellant never experienced any performance problems during her 23 years of service with the agency prior to the events at issue in this appeal.  HR, Track 5 at 29:00, 34:10 (testimony of the appellant).

appellant's disability, and for the reasons explained above, we find that these accommodations would more likely than not have been effective.

¶17    Nevertheless, the agency denied the appellant's requests for telework and a flexible schedule on the basis that such accommodations would create an undue hardship.  IAF, Tab 25 at 55.  In general, an undue hardship exists when provision of the requested accommodation would cause the employing agency significant difficulty or expense.  29 C.F.R. § 1630.2(p)(1).  In determining whether an undue hardship exists, the Board will consider the totality of the circumstances, including the factors listed in 29 C.F.R. § 1630.2(p)(2), as applicable.  *See Josephine S. v. Department of Homeland Security*, EEOC Appeal No. 0120161196, 2018 WL 3415747, at *5 (June 26, 2018).  The agency bears the burden of establishing, through case-specific evidence, that a reasonable accommodation would cause an undue hardship.  *U.S. Airways v. Barnett*, 535 U.S. 391, 402 (2002)

¶18    In this case, the agency proffered two seemingly related reasons for its undue hardship determination: (1) There was a need for the appellant to "fully integrate with her team," and (2) the performance difficulties that the appellant was experiencing required that she be closely supervised.  IAF, Tab 25 at 55. Essentially, the agency is arguing that accommodating the appellant through telework or a flexible schedule would adversely affect "the operation of the [KSC] facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business."  5 C.F.R. § 1630.2(p)(2)(v).  Regarding the first point, the agency did not explain what it would mean for the appellant to "fully integrate with her team."  Presumably, this pertains to the appellant engaging in effective real-time communication with her coworkers.  Nevertheless, it appears to us that being integrated with the team is not an essential function of the Aerospace Technologist position but is instead a means by which an Aerospace Technologist may accomplish the essential functions of her position.  *See Gilberto S. v. Department of Homeland Security*,

EEOC Petition No. 0320110053, 2014 WL 3571431, at \*4-\*5 (July 10, 2014). In any event, the agency does not claim that other teleworkers are not fully integrated with the team, and it has not explained why it believes that a flexible schedule or teleworking arrangement would necessarily prevent the appellant from being "fully integrated."[5] Regarding the second point, the agency did not present evidence as to why it could not provide close supervisory instruction to the appellant during the times that she teleworked or during the remaining hours when she worked at the office. Simply put, the agency has not provided enough to show that the telework or flexible schedule accommodation would cause an undue disruption to its operations or other undue hardship. This is particularly so considering that the telework infrastructure was already in place and ready for the appellant to access, and the agency has significant institutional experience managing both flexible schedule employees and teleworkers.[6] *See Elsa S. v. National Aeronautics and Space Administration*, EEOC Appeal No. 0720180021, 2020 WL 949689 at \*9 (Feb. 14 2020) (finding no undue hardship when the complainant's requested accommodations were in place within the agency, available to employees, and allowed her to perform the essential functions of her

---

[5] The appellant's supervisor testified that, after the agency moved the appellant out of the Headquarters building to various other locations on the KSC campus, she experienced significant difficulty in reaching the appellant by email, telephone, and office visit. HR, Track 4 at 10:10 (testimony of the appellant's supervisor). The agency does not seem to have considered the possibility that working from home might have allowed the appellant to remain at her workstation with less frequent breaks, thereby facilitating her supervisor's ability to reach her during the workday.

[6] To the extent that the agency harbored any doubts about whether these accommodations would be effective or whether they would unduly impede communications between the appellant, her supervisor, and her coworkers, the correct course of action would have been to offer the accommodations on an interim or trial basis. *See, e.g.*, *Mario H. v. Department of Health and Human Services*, EEOC Appeal No. 2021004035, 2022 WL 1449503, at \*5 (Apr. 20, 2022). "Using a possible accommodation for a limited trial period is often part of the ongoing interactive process and can be a path towards identifying an effective accommodation." *Tyson A. v. Department of Agriculture*, EEOC Appeal No. 2020000972, 2021 WL 3839942, at \*6 (Aug. 16, 2021).

position).  For these reasons, we disagree with the administrative judge's finding that the agency proved that these accommodations would constitute an undue hardship.  ID at 29-30.

¶19         We are aware that it is common practice in Federal agencies to revoke, suspend, or otherwise curtail flexible schedule and telework privileges for employees who are experiencing performance problems.  Nothing in this decision is intended to cast doubt on the propriety of those policies and practices in general.  Nevertheless, even if for most employees these arrangements are a privilege, for qualified disabled employees, reasonable accommodations are a right, even if those accommodations entail telework or a flexible work schedule.  No agency policy or management preference can override the statutory requirements of the Rehabilitation Act and the Americans with Disabilities Act (ADA).  *See Garza v. Office of Personnel Management*, 83 M.S.P.R. 336, ¶ 5 (1999), *aff'd*, 250 F.3d 763 (Fed. Cir. 2000) (Table).  As the appellant accurately observes, "denial of an accommodation on the ground that a non-accommodated, disabled employee is experiencing performance inadequacies turns the rationale for the ADA's rule of reasonable accommodation on its head."  PFR File, Tab 1 at 9 (quoting *Goonan v. Federal Reserve Bank of New York*, 916 F.Supp.2d 470, 483 (S.D.N.Y. 2013)).  "Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."  *Borkowski v. Central Valley School District*, 63 F.3d 131, 143 (2nd Cir. 1995).  In this case, it is undisputed that the appellant's alleged performance difficulties were the primary reason that her requests for telework and a flexible schedule were denied.  HR, Track 3 at 15:40, 17:55 (testimony of the appellant's supervisor).

¶20         For these reasons, we find that the appellant has proven her affirmative defense of disability discrimination.  She was a qualified individual with a disability, and the agency failed to provide her a reasonable accommodation.  Nor

has the agency shown that accommodating the appellant with a flexible schedule or part-time telework would have caused an undue hardship. Further, because the agency required the appellant to work without an effective reasonable accommodation both during the PIP period itself and the months immediately preceding the PIP period, we find that there is a sufficient connection between the agency's failure to accommodate and the performance-based removal action such that the removal was based on a prohibited personnel practice under 5 U.S.C. § 2302(b)(1)(D). Therefore, the appellant's removal cannot be sustained. *See* 5 U.S.C. § 7701(c)(2)(B).

## ORDER

¶21    We ORDER the agency to cancel its removal action and restore the appellant to duty effective May 10, 2016. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶22    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶23    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶24    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶25    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT
## REGARDING YOUR RIGHT TO REQUEST
## COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[7]

This Final Order constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                              /s/ for

                                     Jennifer Everling
                                     Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.